IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 5, 2012

## RICKY RONELL JONES v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C11140     Donald H. Allen, Judge**

————————————————

**No. W2011-02737-CCA-R3-PC  - Filed January 22, 2013**

————————————————

The Petitioner, Ricky Ronell Jones, appeals the Madison County Circuit Court's denial of his petition for post-conviction relief from his jury convictions.  On appeal, the Petitioner contends that trial counsel was ineffective by failing to adequately investigate and prepare for trial. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JEFFREY S. BIVINS, joined.

Joseph T. Howell, Jackson, Tennessee, for the Petitioner-Appellant, Ricky Ronell Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; James (Jerry) G. Woodall, District Attorney General; and Joseph T. Howell, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The Petitioner was convicted by a Madison County jury of rape of a child, a Class A felony, and incest, a Class C felony, against his twelve-year-old daughter, L.J.  He received concurrent sentences of twenty-five years as a Range I, child rapist at one hundred percent for the rape of child conviction and six years as a Range I, standard offender for the incest conviction.  These sentences were to be served consecutively to three convictions to which he pled guilty regarding his fifteen-year-old daughter, B.J.,[1] for a total effective sentence of

---

[1] With respect to crimes against B.J., the Petitioner pled guilty to rape, a Class B felony, incest, a Class C felony, and sexual battery, a Class E felony.  He received concurrent sentences of twelve years as a Range I violent offender at one hundred percent for the rape conviction and six and two years, respectively,

thirty-seven years. For his crimes against L.J., the jury imposed a $50,000.00 fine for the rape of a child charge and a $10,000.00 fine for the incest charge, which the trial court reduced to $5,000.00 and $1,000.00, respectively.

While his direct appeal was pending, the Petitioner filed a pro se petition for post-conviction relief alleging ineffective assistance of counsel with respect to his jury convictions regarding L.J. After counsel was appointed, the parties entered an agreed order staying proceedings pending this Court's decision on direct appeal. This Court affirmed the judgments of the trial court on August 30, 2011. State v. Ricky Ronell Jones, No. S2010-01831-CCA-R3-CD, 2011 WL 3849562 (Tenn. Crim. App., at Jackson, Aug. 30, 2011) (concluding evidence was sufficient to support jury verdicts and affirming consecutive sentencing).[2]

The facts, in pertinent part, from our direct appeal show that the Petitioner, L.J., B.J., and the Petitioner's sister, Stephanie Reid, testified at trial. L.J. said that

> about two or three months before her twelfth birthday, [she] was at home with B.J. and the [Petitioner] while her mother and brother were at work. L.J. was in her bedroom watching television, and B.J. was in her bedroom. The [Petitioner] called L.J. to her parents' bedroom. When she walked into the bedroom, the [Petitioner] was sitting on the bed. He was wearing a shirt, but his pants were down. He told L.J. to put his penis in her mouth. After one or two minutes of moving his penis "back and forth" in L.J.'s mouth, the [Petitioner] stopped, walked away, and went into the laundry room. . . .

Id. at *1. L.J. testified that when first questioned by her mother in the presence of B.J. and her aunt, Stephanie Reid, L.J. denied that the Petitioner had "done anything" to her "because she was scared." However, she testified that "when she was alone with her mother, [she] disclosed the details of the incident in her parents' bedroom." Id.

L.J.'s sister, B.J., corroborated her account of the offense:

B.J. testified that . . . . in the summer of 2008, she was at home with L.J. and the [Petitioner] while her mother and brother were at work. B.J. said that she

---

as a Range I standard offender for the incest and sexual battery convictions. The Petitioner's guilty pleas and sentences therefrom are not at issue in this appeal.

[2]Trial Counsel testified that he did not file a petition for permission to appeal to the Tennessee Supreme Court but that the Petitioner might have filed one pro se.

2

was on the family computer in her parents' bedroom. The [Petitioner] was also in the room. B.J. left to go to the bathroom and heard the [Petitioner] call L.J. into the bedroom. When B.J. went to the bathroom, she left the door to her parents' bedroom open, but when she returned, the door was closed. B.J. opened the door "a little" and saw the [Petitioner] and L.J. in the bedroom. She said that the [Petitioner's] penis was in L.J.'s mouth.

Id.

The proof further showed that the Petitioner provided a statement of admission to Deputy William Alan Kirby of the Madison County Sheriff's Department. Deputy Kirby testified that on January 8, 2009:

The [Petitioner] told [him] that he was "feeling down because of what [he] did." Deputy Kirby asked what the [Petitioner] meant, and the [Petitioner] said he had done "something real bad." Deputy Kirby asked the [Petitioner] if he wanted to talk about it. The [Petitioner] told Deputy Kirby, "I touched my daughter . . . . I fondled my daughter, my twelve-year old daughter."

Id. at *2.

The Petitioner testified at trial and denied engaging in oral sex with L.J. He said that he was blind in his right eye and that in February of 2008, he had a cornea transplant in his left eye. Id. The Petitioner testified that "[h]is wife and son were employed, and the [Petitioner] stayed home to care for B.J. and L.J." Id.

At the post-conviction hearing, the Petitioner testified that Counsel "should have sent out his State investigator to talk to Ronell Jones, which is [the Petitioner's] son; [his] wife at the time, Juana Jones; and [his] sister, Stephanie Reed." The Petitioner believed that each of these persons would have said that L.J. "did say that [the Petitioner] did not commit this offense."

The Petitioner testified that he could not read "the investigation" himself, but he recalled that "somewhere" it "said something to the effect that [the offense occurred] . . . seven months within [L.J.'s] twelfth birthday."[3] He said that Counsel "should have looked

---

[3]On cross-examination, the Petitioner testified that L.J.'s birthday was August 18 and that it was because of her age that he "ended up with just this last charge here," presumably rape of a child. L.J. testified that she was born August 19, 1996. Jones, 2011 WL 3849562, at *1. Tennessee Code Annotated Section 39-13-522 (2006 & Supp. 2007) defines rape of a child as the "unlawful sexual penetration of a

3

into the allegations about that seven months earlier" and should have obtained his medical records, which would have shown that he had one retinal detachment repaired in early 2007, another retinal detachment repaired in "2007 going into 2008," and a cornea transplant in February of 2008. He testified that after the retinal surgery, he had "to look down at [his] feet everywhere" he went for "six to eight weeks," and that after the cornea transplant, he "was not able and even mobile until October of 2008." He said medical records would have proven that he was "bedridden" after his surgeries, and "there was no way [he] could have walked away [from L.J.] because [he] wasn't mobile[.]" He could not recall whether he told Counsel that his medical condition rendered him immobile.

The Petitioner testified that he asked Counsel to obtain Mrs. Jones's work records in an effort to prove that he was not alone with L.J. seven months prior to her twelfth birthday. The Petitioner believed the records "would have [shown] that [Mrs. Jones] had a day job at the time." The Petitioner also asked Counsel to obtain Mrs. Jones's bank statements to show that she had "a motive to see [him] get out of the way," because they would have revealed that Mrs. Jones received "$1700 off [his] Social Security money from February up until December of 2009 while [he] was incarcerated."

The Petitioner wanted Counsel to have his statement to Deputy Kirby suppressed because he was on suicide watch at the time he made the statement to Deputy Kirby. The Petitioner wanted the jury to know that when he made the alleged statement, he "was in duress and under a lot of stress . . . and [he felt] like that probably would have voided their thoughts about that statement that Officer Kirby made."

On cross-examination, the Petitioner acknowledged that he testified at trial and told the jury he was "legally blind." He agreed that his sister, Ms. Reid, testified on his behalf at trial regarding L.J.'s conversation in January of 2009, wherein the Petitioner says L.J. denied he committed the crimes.

Counsel testified that he was appointed to represent the Petitioner around the time of his arraignment and that he represented him at trial and on appeal. He met with the Petitioner eight times in jail prior to trial. He shared discovery with the Petitioner and acknowledged that a fellow inmate read documents to the Petitioner because of his "eye condition[.]" Counsel testified that he was able to communicate with the Petitioner and believed the Petitioner understood his discussions.

---

victim . . . [who is] more than three (3) years of age but less than thirteen (13) years of age." Because L.J. testified, and the record does not contradict, that she was born in 1996, whether the offense occurred a few months prior to or after her twelfth birthday, section 39-13-522 of the Code applies.

Counsel subpoenaed Mr. Jones for trial and decided not to call him as a witness because Mr. Jones "basically said he was not present when anything did or didn't happen and he really didn't know anything one way or the other[.]" Counsel further explained that Mr. Jones did not seem "very sympathetic to our side." He would have called Mr. Jones to testify "[i]f he would have had anything that would have helped, . . . but he just didn't have any information." Counsel confirmed that Ms. Reid testified at trial as a witness for the defense.

Counsel said he did not obtain the Petitioner's medical records because he thought that the jury would see that the Petitioner had vision problems, and his "daughters testified that he had vision problems and things like that." Additionally, Counsel testified that he did not note any issue regarding the Petitioner's bank records until after the Petitioner was tried and convicted. As to Mrs. Jones's work records, Counsel said the indictment did not list a specific date and "the State's theory was that [L.J.] . . . couldn't recall what day it was so I don't know that we could have disproven the offense date because she didn't really know what it was. She just said a certain time period in 2008." Further, Counsel recalled the Petitioner's daughters "said that [their mother] was not there and that's why he was babysitting."

Regarding the Petitioner's allegations that Counsel should have suppressed his statement to Deputy Kirby, Counsel stated:

> I don't know that we talked about it being suppressed. I know his contention was that basically when he made that statement, he was referring to his other daughter, the daughter he pled guilty to the offenses with. So, I didn't want to bring that out at all and have the jury hear he had pled guilty to incidents with the other daughter. We tried to keep it vague and let Deputy Kirby just testify about that. I remember he did say that he was basically not referring to [L.J.], but to [B.J.]

Counsel believed there was no legal basis upon which to support a motion to suppress the Petitioner's statement to Deputy Kirby. Counsel stated, "He wasn't being interrogated. It was a voluntary statement I think that he made after they had reports that he tried to commit suicide in the jail and I think Deputy Kirby was just investigating that . . . ." Finally, on cross-examination, Counsel testified that the Petitioner did not deny making the statement to Deputy Kirby.

Counsel additionally explained "the problem with [the Petitioner's] theory" that his eye surgery precluded him from being active enough to commit the offense was that the crimes he was charged with involved no "force or anything like that." Counsel stated the Petitioner was charged with instructing L.J. in the bedroom to perform oral sex on him.

5

The post-conviction court denied the petition on December 15, 2011, and the Petitioner timely filed a notice of appeal December 27, 2011. In its order denying relief, the post-conviction court determined the following:

> that trial counsel fully investigated the Petitioner's case, spoke with witnesses, called witnesses to testify, met and consulted with the Petitioner eight times before trial, discussed trial strategy with the Petitioner, and consulted with the Petitioner throughout the trial [and]
>
> that trial counsel found no legal basis to file a Motion to Suppress the Petitioner's voluntary statement, that the Petitioner was found to be competent for trial, and that the Petitioner testified at his trial [and]
>
> that the State had a very strong case based upon the evidence against the Petitioner[.]

The post-conviction court additionally found that "the advice given and services rendered by trial counsel . . . were within the range of competence demanded of attorneys representing defendants in criminal cases" and that "the Petitioner failed to establish by clear and convincing evidence that his trial counsel's performance was deficient and that any alleged deficient performance prejudiced the defendant."

## ANALYSIS

On appeal, the Petitioner asserts that Counsel's performance with respect to the charges involving L.J. was deficient because he failed to interview witnesses, obtain records, and seek suppression of the Petitioner's statement to Deputy Kirby. The State responds that the Petitioner failed to prove deficient performance of Counsel or prejudice. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their

testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110 (f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689, 104 S. Ct. 2065). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2065.

**A.  Failure to interview witnesses.** The Petitioner argues that Counsel failed to interview the Petitioner's son, Mr. Jones, the Petitioner's wife at the time of the offenses, Mrs. Jones, and the Petitioner's sister, Ms. Reid, to show that L.J. "had stated that he (the Petitioner) did not commit the alleged offenses." The post-conviction court found that trial counsel "spoke with witnesses, [and] called witnesses to testify." The record shows that Counsel interviewed Ms. Reid several times and interviewed Mr. Jones at trial. Counsel additionally subpoenaed Mr. Jones to trial and chose not to call him to testify. Counsel explained that Mr. Jones was not an eyewitness, had no information regarding the case, and was unsympathetic to the Petitioner.  The Petitioner further acknowledged that Ms. Reid testified at trial as a witness for the defense and that she addressed L.J.'s statements made in January of 2009.  The record supports the determination of the post-conviction court. Accordingly, the Petitioner has failed to show deficient performance of counsel or prejudice as a result.

**B. Failure to obtain records.**   The Petitioner next contends that Counsel's performance was deficient due to his failure to obtain the Petitioner's medical records and Mrs. Jones's work records and bank statements.  The post-conviction court found that Counsel "fully investigated the Petitioner's case . . . discussed trial strategy with the Petitioner, and . . . . none of trial [C]ounsel's actions or omissions were so serious as to fall below the objective standard of reasonableness under prevailing professional norms." Here, the Petitioner failed to produce any of these records at his evidentiary hearing. This court has repeatedly stated that "[f]or purposes of proving an ineffective assistance of counsel claim, proof of deficient representation by omission requires more than a speculative showing of a lost potential benefit." Owens v. State, 13 S.W. 3d 742, 756 (Tenn. Crim. App. 1999) (affirming denial of post-conviction relief where petitioner "failed to produce any evidence at the post-conviction hearing indicating that an investigator would have discovered any information favorable to her case."). The Petitioner claims that had Counsel "investigated

8

these records, counsel would have learned that Mrs. Jones was not working during the evenings and the Petitioner was not alone with the alleged victim." Because the Petitioner failed to produce these records at the post-conviction hearing, his claim of Mrs. Jones' whereabouts at the time of the offense is no more than pure speculation. Accordingly, counsel's decision not to produce Mrs. Jones's employment records did not amount to deficient performance or prejudice. The Petitioner is not entitled to relief on this issue.

We further conclude that Counsel's decision not to produce the Petitioner's medical records did not constitute deficient performance. Here, the Petitioner contends that production of his medical records would have shown that "he [was] incapacitated at the time of the alleged offense." However, the record shows that the medical records would not have proven that the Petitioner was unable to commit the offense. Counsel believed that it was sufficient for the jury to see that the Petitioner had vision problems. Moreover, testimony of the Petitioner's blindness and eye conditions was elicited at trial, including from the Petitioner and his daughters. See Jones, 2011 WL 3849562, at *2. Finally, as Counsel stated, the Petitioner was charged with instructing L.J. to perform oral sex which did not require force.

Next, the Petitioner asserts that Mrs. Jones's bank records would have shown that she had a financial motive for the Petitioner to go to jail. Here, Counsel testified that the Petitioner did not mention the bank records until after trial. The post-conviction court found, and we agree, that the Petitioner has failed to demonstrate deficient performance or prejudice as a result. Accordingly, he is not entitled to relief on this issue.

**C. Failure to suppress statement.** The Petitioner argues that Counsel should have sought the suppression by the court of his statement to Deputy Kirby. The State responds that this complaint concerns "trial strategy [and] tactical decisions made by his trial counsel." We agree. Here, Counsel testified that the Petitioner did not deny making the statement but rather explained only that he was speaking of his older daughter, B.J., at the time. The record shows that Counsel wanted to avoid bringing attention to the statement because the Petitioner had entered guilty pleas to similar offenses against his older daughter. Additionally, counsel testified that there was no legal basis to support a motion to suppress. We view counsel's decision not to file a motion to suppress as a tactical decision which we are unwilling to second-guess. Owens v. State, 13 S.W.3d 742, 756 (Tenn. Crim. App. 1999). In so much as the Petitioner seemingly argues that he wanted an opportunity to explain the alleged stressful circumstances surrounding when he gave the statement to Deputy Kirby, the Petitioner testified at trial. The record supports the determination of the post-conviction court. Accordingly, the Petitioner has failed to show that counsel engaged in deficient performance or prejudice as a result. He is not entitled to relief.

9

## CONCLUSION

Upon a thorough review of the record, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE